United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANGEL AMEZCUA-CASILLAS,

    Defendant.

No. CR 13-00186 CRB

**ORDER RE: MOTION TO SUPPRESS**

Defendant Amezcua-Casillas is charged with being an illegal alien in possession of a firearm. Now before the Court is Amezcua-Casillas' motion to suppress evidence of a firearm, and all other evidence found in his home during a search authorized by a warrant from a state court. Amezcua-Casillas argues that the warrant was invalid because the supporting affidavit failed to establish probable cause. After carefully considering the record, and the parties' written and oral submissions, the Court GRANTS the motion.

## BACKGROUND

Amezcua-Casillas is charged with various counts related to possession of a firearm by an alien (18 U.S.C. § 922(g)(5)), possession of a stolen firearm (18 U.S.C. § 922(j)), and being an unlicensed firearm dealer (18 U.S.C. § 922(a)(1)). Indict. (dkt. 1) at 1-2. The charges stem from the search of Amezcua-Casillas' home pursuant to a search warrant issued by a judge on the Superior Court of San Francisco. Officer Perdomo of the San Francisco Police Department signed an affidavit in support of the search warrant. Perdomo's affidavit was based, in part, on an undercover operation in which Perdomo engaged Amezcua-Casillas via text messages in negotiations to purchase a firearm. Mot. to Suppress (dkt. 8) at 2. This affidavit is the focus of Amezcua-Casillas' motion to suppress.

According to the affidavit, Perdomo received information from a confidential reliable informant in January 2013 that led to the arrest of Jaime Ochoa for possession of 1/8 of an ounce of methamphetamine. Mot. to Suppress, Ex. 1 (Affidavit for Search Warrant) at 1-2.

1  Perdomo obtained a search warrant for Ochoa's phone and found a text message with a photo
2  of a firearm received from a phone number he later determined to belong to Amezcua-
3  Casillas.[1] Id. at 2. Perdomo[2] explains what happened next in the affidavit:

> On February 13, 2013, I text 415-307-7206 pretending to be a friend of Ochoa's. I text the user of 415-307-7206 that I was looking to buy a firearm for $500.00. The user of 415-307-7206 replied that he would sell me a .38 super for $600.00. The user sent me a photo of the firearm via text. . . .
> Between February 13, 2013 to February 21, 2013, I contacted 415-307-7206 regarding the sale of multiple firearms. The user of 415-307-7206 admitted that the firearm depicted in [the photo] had been sold since he sent the photo. The user of 415-307-7206 stated that he would attempt to acquire a 9 millimeter or a .45 caliber firearm to sell to me. . . .
> A computer check revealed that there is no record of Angel Amezcua-Casillas being a licensed firearm dealer. I know it is unlawful under Cal. Penal Code Section 26500(a) for a person to sell a firearm without a license.

Id. at 2-3.

The text message exchange additional shows relevant information not included in Perdomo's affidavit. Specifically, on February 21, 2013 Amezcua-Casillas texted Perdomo that he had been unable to find any firearms: "no, no I have nothing."[3] Mot. to Suppress, Ex. 2 (Text message spreadsheet) at 2. For the next six days Amezcua-Casillas made no mention of firearms of any kind despite numerous inquiries from Perdomo. After Amezcua-Casillas stopped responding to Perdomo's texts, Perdomo secured a warrant to search Amezcua-Casillas' home. Mot. to Suppress at 4. The search yielded an illegal firearm and ammunition, among other things. Opp. to Mot. to Suppress (dkt. 9) at 1.

## LEGAL STANDARD

Courts must show deference to a magistrate judge's determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983). Nonetheless, courts are "not to defer to a warrant

---

[1] Although Amezcua-Casillas argues that the person sending texts from this number may not have been him, the Court need not reach this issue and, for purposes of this order, assumes it was him.

[2] Perdomo has extensive background and training in narcotics and undercover operations, but no particular training in firearms enforcement. Mot. to Suppress, Ex. 1 at 1.

[3] The original in Spanish is: "No no hay nada." Literally translated this is: "No no there is nothing." The English translation above is taken from the papers but it is unclear why the translator converted the passive voice in the original into the first person active construction that appears in the papers.

2

based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." United States v. Leon, 468 U.S. 897, 915 (1984) (internal quotation omitted). The affidavit supporting a search warrant must show a "'fair probability that contraband or evidence of a crime [would] be found in' defendant's home." United States v. Hill, 55 F.3d 479, 480 (9th Cir. 1995) (alteration in original) (quoting Gates, 462 U.S. at 238).

**ANALYSIS**

The central question before the Court is whether Perdomo's affidavit established probable cause to search Amezcua-Casillas' home. The affidavit must at least show a "fair probability that contraband or evidence of a crime [would] be found in defendant's home." Hill, 55 F.3d at 480 (alteration in original) (internal quotations omitted). Here, the affidavit is deficient in significant ways,[4] and accordingly the Court GRANTS the motion.

**I. The Affidavit Misstates California Law.**

The affidavit incorrectly states California law: "I know it is unlawful under Cal. Penal Code Section 26500(a) for a person to sell a firearm without a license." Mot. to Suppress, Ex. 1 at 3. California has a general rule that only licensed dealers sell firearms but there are pages of exceptions to the rule. Cal. Penal Code § 26500 et seq. Amezcua-Casillas' attempted sale could easily have fallen under one of the exceptions, such as the "infrequent" transaction exception. Cal. Penal Code § 26520(a).[5] It is common sense that thousands of gun sales occur every year in California without a license, pursuant to the infrequent transaction exception. The affidavit and the text message exchange provide evidence of at most one completed and one contemplated transaction, not enough to establish probable cause here. Mot. to Suppress, Ex. 1, Ex. 2.

---

[4] Amezcua-Casillas also argues that the affidavit failed to establish a nexus between the illegal conduct alleged and his home. Mot. to Suppress at 10. Because the Court finds that the affidavit failed to establish probable cause, it need not reach this issue.

[5] The license requirement "does not apply to the infrequent sale, lease, or transfer of firearms," Cal. Penal Code § 26520(a), where "infrequent" is defined as "less than six transactions per calendar year." Cal. Penal Code § 16730(a)(1).

3

Even someone who does not qualify for any of the exceptions to the license requirement under Cal. Penal Code § 26500(a) may negotiate the sale of a firearm if the sale is conducted through a licensed dealer. Cal. Penal Code § 27545. Here, the negotiations did not proceed far enough to included any discussion of how the final sale would occur. Mot. to Suppress, Ex 2. To uphold the validity of the search warrant here would, in effect, mean that anyone who offers to sell or find a firearm for a prospective buyer could have their home subject to search unless they are personally licensed.

The government argues that "a search warrant need not negate all innocent explanations in order to establish probable cause." Opp. to Mot. to Suppress at 4. Indeed, "[t]he test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior." United States v. Thomas, 863 F.2d 622, 627 (9th Cir. 1988). However, here, where far fewer than the statutory threshold of six transactions occurred, Cal. Penal Code §§ 26520(a), 16730, and no specific arrangements were made for the sale, the exceptions practically swallow the license requirement rule established in Cal. Penal Code § 26520(a).[6] Absent more concrete facts suggesting criminal activity, the affidavit fails to establish probable cause.

## II. The Affidavit Omits Key Facts.

The affidavit omits significant facts which, if included, would have undermined probable cause to search Amezcua-Casillas' home. Conclusions of the affiant unsupported by underlying facts cannot be used to establish probable cause. United States v. Cervantes, 703 F.3d 1135, 1139-40 (9th Cir. 2012). The affidavit omits the fact that, after an initial exchange of text messages, Amezcua-Casillas wrote that he did not have access to firearms for sale: "no no there is nothing" ("no no hay nada"). Mot. to Suppress, Ex. 1, Ex. 2 at 2.

---

[6] Also significant is that the language in the text message exchange *and* the affidavit itself is in the passive voice: "the gun had been sold." Mot. to Suppress, Ex. 1 at 3, Ex. 2 at 1. The use of the passive voice and the fact that "the gun had been sold" make it less likely that Amezcua-Casillas would be in possession of a firearm a week later when the warrant was issued.

4

1  Perdomo sought, received, and executed the search warrant a full week after receiving that
2  message. Mot. to Suppress, Ex. 1 at 3; Resp. to Mot. to Suppress at 1.

3      The affidavit's factual omission of Amezcua-Casillas' statement that there were no
4  firearms available is significant for at least two reasons. First, the affidavit seeks to establish
5  probable cause by relying on Amezcua-Casillas' own words: his offer to sell a firearm and
6  then to find other firearms once the first one was no longer available. The affidavit included
7  only those portions of the text message exchange that could support probable cause and
8  excluded the subsequent messages that would have undermined probable cause. Second,
9  Amezcua-Casillas uses the passive voice ("no no there is nothing") which suggests that he
10 may not be in possession of the firearms nor is he actually selling the firearms but rather he is
11 a middle man or agent.

12     The government argues that the photos attached to the affidavit showing a photo of a
13 firearm with a large capacity magazine which Amezcua-Casillas had sent to Ochoa
14 establishes probable cause. Opp. to Mot. to Suppress at 7. California Penal Code § 32310
15 makes it unlawful to "expose[] for sale" a large-capacity magazine. However nothing in the
16 affidavit suggests that Amezcua-Casillas intended or attempted to sell the magazine.
17 Literally millions of products are advertised everyday on the internet with attractive photos:
18 Just because a car advertisement depicts a car with a surfboard on the roof does not mean the
19 surfboard is actually for sale. The government, similarly, goes too far in arguing that
20 probable cause existed because Amezcua-Casillas attempted to sell a firearm "to a known
21 drug and illegal firearms dealer." Id. The affidavit provides no information to suggest that
22 Amezcua-Casillas knew Ochoa had sold drugs, rather than the fact that the government knew
23 Ochoa to be a drug dealer. All that the affidavit establishes about the relationship between
24 Ochoa and Amezcua-Casillas is that the two had exchanged a text message including a photo
25 of a firearm. Mot. to Supp., Ex. 1 at 2.

26     **III. The Good Faith Exception to Probable Cause Does Not Apply.**

27     The government further argues that, even if the warrant lacked probable cause,
28 Perdomo acted in "good faith" in reliance on the warrant, and therefore the evidence should

5

not be suppressed. Opp. to Mot. to Suppress at 16, citing United States v. Crews, 502 F.3d 1130, 1136 (9th Cir. 2007). See also United States v. Leon, 468 U.S. 897, 908 (1984) (holding that the exclusionary rule does not apply "when law enforcement officers have acted in objective good faith or their transgressions have been minor"). However, as discussed supra, the affidavit omitted significant facts. Perdomo knew what he neglected to include in the affidavit. Amezcua-Casillas had been unable to find firearms for sale. But for this material omission, the judge may not have issued the search warrant. Because Perdomo knew what the judge did not: that Amezcua-Casillas had not been able to find guns for sale, the good faith exception does not apply.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Amezcua-Casillas' motion to suppress.

**IT IS SO ORDERED.**

Dated: August 29, 2013

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE